| .PER CURIAM.
This matter is before the court on application for supervisory writs of certiorari and review by defendant/relator, Gary Morrison. This is a capital case wherein the State is seeking the death penalty. At trial, part of the State’s evidence will include an oral tape recording of what the State alleges is the defendant making in-culpatory statements concerning this crime. The defendant has challenged this assertion, arguing that the voice on the recording is not his voice. At a hearing to determine the admissibility of expert evidence on this issue, defense counsel offered the testimony of Dr. A1 Yonovitz, a voice identification expert. Upon the conclusion of Dr. Yonovitz’s testimony, the trial court held that the defendant failed to satisfy the requirements of Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) and ordered the expert testimony of Dr. Yonovitz inadmissible at trial. The defendant seeks review of that ruling. For the following reasons, we deny the writ.
Dr. Yonovitz’s report indicated that based primarily on the general guidelines promulgated by the International Association of Identification (IAI), as well as current theory and practice in phonologic linguistic aural analyses, the results yielded a positive elimination of relator with respect to the voice and speech attributed to him in the known exemplar. According to Dr. Yonovitz, two voice exemplars were taken from relator and compared to the unknown exemplar. Dr. Yonovitz concluded that relator was definitely not a speaker in the unknown exemplar.
The trial court’s evaluation of scientific evidence must be flexible, with an eye toward reliability and relevancy. Admission of scientific evidence is within the discretion of the trial judge. State v. Edwards, 97-1797, pp. 25-26 (La.7/2/99), 750 So.2d 893, 908-909, cert. denied, 528 U.S. 1026, 120 S.Ct. 542, 145 L.Ed.2d 421 (1999). The court must consider the fol *742 lowing factors: (1) whether the theory or technique in question can be and has been tested; (2) whether it has been subjected to peer review and publication; (3) its known or potential error rate and the existence and maintenance of standards controlling its operation; and (4) whether it has attracted widespread acceptance within a relevant scientific community. Daubert, 509 U.S. at 593-594, 113 S.Ct. 2786. Louisiana courts have adopted the reasoning and observations of Daubert, which specifically rejected .the “general acceptance” test and outlined the means for determining reliability.
|2Voice identification analysis consists of both “critical listening,” which requires an expert to carefully listen to the qualities of two voices, and spectrographic analysis. In the latter phase, a computer-based instrument compares the frequencies and amplitudes of a voice on a questioned recording with those of a known sample. United States v. Drones, 218 F.3d 496, 499 n. 4 (5th Cir.2000), cert. denied, 531 U.S. 1151, 121 S.Ct. 1095, 148 L.Ed.2d 968 (2001). According to Dr. Yonovitz’s testimony, the State could test or retest the information, and if an examiner had the same raw data that he used, the examiner could fully replicate his findings.
Dr. Yonovitz testified that within the last 200 times that he has .given presentations to a professional audience, only two or three presentations have not been accepted by the panel. He further testified that he has published many times in acute listening which is required by the standards, and he has published in spectro-graphic analysis, which is the analysis used to conduct the testing of the defendant. Dr. Yonovitz further stated that it is the opinion of his peers that this is a recognizable field of expertise.
When questioned concerning his error rate, Dr. Yonovitz answered that the error rate in his measurement of formats was very low, but he stated he did not know specific error rates. The State’s questioning of Dr. Yonovitz emphasized the inconsistency in error rates when distinguishing between Dr. Yonovitz’s assertion of a 1% error rate given by Dr. Bruce Koenig and an FBI study done by Oscar Tosi finding the error rate to be 18%.
Dr. Yonovitz testified that standards for examiners were promulgated in this area by the American Board of Recorded Evidence (ABRE) in 1998. He testified that he followed the ABRE standards, which specify the requirements of the American Board of Recorded Evidence for the comparison of recorded voice samples. Dr. Yonovitz indicated that the 1998 regulations have not been revised since 1998 and do not reflect today’s equipment.
Although Dr. Yonovitz testified in favor of the voice identification analysis technique, he did not introduce supporting documentation to verify the error rates and studies conducted within the field or to support his claims concerning the development of this field. The inconsistency in error rates clearly illustrates the uncertainty of this method, and a proper foundation has not been established pursuant to the factors listed within Daubert, 509 |sU;S. at 593-594, 113 S.Ct. 2786. Moreover, other courts considering the uncertainty of .the law regarding the reliability and admissibility of expert voice identification evidence have also concluded that there are problems concerning the reliability and scientific validity of the method. See United States v. Drones 218 F.3d at 501-504 (5th Cir.2000); see also United States v. Angleton, 269 F.Supp.2d 892 (S.D.Tex.2003).
Accordingly, the defendant’s writ application seeking review of the district court’s *743 denial of the admissibility of Dr. Yonovitz’s expert testimony is hereby denied.
WRIT DENIED.